# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AIMEE SNOW WAGONER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND RECOMMENDATION** |
| AMERICAN FAMILY LIFE | ) | |
| ASSURANCE COMPANY OF | ) | 1:08CV394 |
| COLUMBUS d/b/a/ AFLAC, | ) | |
| INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's Motion to Dismiss and to Compel Arbitration (docket no. 19). Plaintiff has responded in opposition, and the matter is ripe for disposition. Because the parties have not consented to the jurisdiction of the magistrate judge, the court must deal with the motion by way of recommendation. For the reasons discussed herein, it will be recommended that Defendant's motion be granted.

## A. Background

Plaintiff Aimee Snow Wagoner brought this action on June 12, 2008. She filed an Amended Complaint on September 22, 2008 (docket no. 16). In her amended complaint, Plaintiff alleges that on June 8, 1998, she entered into an agreement with Defendant AFLAC to be a Sales Associate in the state of North Carolina. (Am. Compl. ¶ 8.) Plaintiff alleges that, "[d]espite the employment agreement in which [Plaintiff] was designated as a[n] independent contractor, she was an employee" of

AFLAC, not an independent contractor. *(Id.* at ¶ 9.) As an employee, according to Plaintiff, she was entitled to certain benefits such as medical and dental coverage, life insurance, retirement plan, and other benefits, none of which were provided to her. *(Id.* at ¶¶ 10, 11.)

Plaintiff alleges that on or about October 3, 2003, while working as a Sales Associate for AFLAC, she discovered that there had been a break-in in her office. *(Id.* at ¶ 15.) "[S]he saw that a cellular modem card had been inserted into her lap top" and that "phone cords [were] hanging from the laptop." *(Id.* at ¶ 16.) Plaintiff "was concerned that the computer programs had Protected Health Information and other personal information on herself and approximately 6,000 other individuals, most of who[m] were insured by AFLAC." *(Id.* at ¶ 17.) Plaintiff alleges that following notice of this security breach, Defendant took no steps to notify or protect its insured individuals or sales associates from the use of their personal information. *(Id.* at ¶ 18.) As a result of Defendant's failure to act, Plaintiff alleges that she was a victim of identity theft and was injured in various ways. (*Id.* at ¶ 19.) Furthermore, Plaintiff alleges that her employment relationship with Defendant was damaged, and that in December 2005 she was terminated from her employment. *(Id.* at ¶¶ 20-23.)

Plaintiff alleges that shortly after her termination, she entered her office and discovered that her "computers were running despite the fact that no one was in the office." *(Id.* at ¶ 24.) Plaintiff goes on to allege that on January 9, 2006, Defendant reported her to the North Carolina Department of Insurance for "writing fictitious

2

insurance applications and filing false insurance claims." *(Id.* at ¶ 25.) According to Plaintiff, a case against her was presented to the Yadkin County grand jury; during discovery in that proceeding, she discovered checks and documents which were allegedly signed by her but which, in fact, she did not sign. (*Id.* at ¶ 26.)

Plaintiff alleges three causes of action in her amended complaint. In her first claim, she alleges that Defendant violated ERISA by failing to provide her benefits afforded to its other employees and by failing to prevent fraudulent withdrawals from her Stock Bonus plan account. (*Id.* at ¶¶ 29-36.) In her second cause of action, Plaintiff alleges that Defendant's actions violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1 *et seq.* ("UDTPA"). *(Id.* at ¶¶ 37-39.) Finally, Plaintiff alleges that Defendant violated ERISA by failing to provide her with copies of the ERISA plan documents. *(Id.* at ¶¶ 40-43.)

In support of its motion to dismiss and compel arbitration, Defendant contends that Plaintiff and Defendant entered into a subsequent Associate's Agreement in 2003 which "supersede[d] and replace[d] all prior contracts and agreements between the parties relating to the subject matter of the" Agreement. (Brief Supp. Def.'s Mot. to Dismiss, Ex. A, Associate's Agreement, hereinafter "Ex. A.") By the terms of this Agreement, Plaintiff performed "as an independent contractor of AFLAC." (Ex. A ¶ 1.3.) The Agreement contained an arbitration provision that stated in pertinent part:

> [T]he parties agree that any dispute arising under or related in any way
> to this Agreement ("Dispute"), to the maximum extent allowed under the

3

Federal Arbitration Act ("FAA"), shall be subject to mandatory and binding arbitration, including any Dispute arising under federal, state or local laws, statutes or ordinances . . . . THE PARTIES WAIVE ANY RIGHT TO TRIAL BY A JURY IN A COURT OF LAW TO RESOLVE ANY DISPUTE.

*(Id.* ¶ 10.1.) Plaintiff appears to not dispute that this Agreement is the one in place at the time of Plaintiff's termination; accordingly, the court will address the issues as if the parties were operating under the 2003 Agreement.[1]

## B. Discussion

### 1. North Carolina Unfair and Deceptive Trade Practices Act Claim

With regard to Plaintiff's UDTPA claim, Defendant has moved for dismissal pursuant to FED. R. CIV. P. 12 (b)(6) for failure to state a claim for which relief can be granted. In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded

---

[1] In the Amended Complaint, Plaintiff references the 1998 Associate's Agreement. (Am. Compl. ¶ 8.) Nevertheless, in her Memorandum in Opposition to Defendant's Motion, Plaintiff addresses the arbitration provision in the 2003 Agreement: "The arbitration provision in question is contained within an agreement titled, 'Associates Agreement.' The relevant provision within the Associates Agreement is ¶ 10: Arbitration and Other Legal Proceeding. AFLAC alleges that this is an agreement subsequent to the one [Plaintiff] initially signed. However, AFLAC fails to describe the circumstance or give any facts that would indicate that there was adequate consideration for the agreement to arbitrate or whether it was a bargained for agreement. Regardless, the provision is unconscionable on its face." (Pl.'s Resp. Br. 8, docket no. 21.) Plaintiff then devotes the remainder of her memorandum to a discussion of the unconscionability of this provision in the 2003 Agreement.

4

allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has recently instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

To state a claim for unfair and deceptive trade practices under the North Carolina UDTPA, Plaintiff must allege and show: (1) that Defendant committed unfair or deceptive acts; (2) in or affecting commerce; (3) which proximately caused her injury. *See* N.C. GEN. STAT. § 75-1.1(a); *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). "A

5

practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* A practice is deceptive if it has the capacity or tendency to deceive. *Id.*

Generally, there is a presumption against unfair and deceptive practice claims arising out of an employment relationship, because such claims are not sufficiently "in or affecting commerce" to meet the second element of an UDTPA claim. *Gress v. Rowboat Co.*, ___ N.C. App. ___, 661 S.E.2d 278, 281-82 (2008). Nevertheless, the mere existence of an employee-employer relationship does not preclude a party from pursuing an UDTPA claim. *Dalton*, 353 N.C. at 656, 548 S.E.2d at 710. Generally, however, in such a context the claimant must make a showing of business-related conduct that is unlawful or of deceptive acts that affect commerce beyond the employment relationship. *A-1 Pavement Marking, LLC v. APMI Corp.*, No. 07CVS3186, 2008 WL 2974103, at *5 (N.C. Super. Ct. Aug. 4, 2008) (citing *Gress*, 661 S.E.2d at 282).

Here, Plaintiff alleges that Defendant's actions in "refus[ing] to provide Plaintiff benefits afforded to its other employees" and in failing "to protect [Plaintiff] from fraudulent withdrawals from her Stock Bonus Plan" constitute unfair and deceptive trade practices within the meaning of the Act. These allegations are insufficient to support Plaintiff's UDTPA claim. In her memorandum in opposition to Defendant's motion, Plaintiff attempts to characterize her relationship with Defendant as a

"consumer," but the reality is that her claims arise completely out of her employment relationship with Defendant. Plaintiff states that her "duties and terms of her employment are an entirely separate issue from that of her right to have her identity protected when she enters into a legitimate business transaction outside the scope of her employment" (Pl.'s Resp. Br. at 5, docket no. 21), but nowhere in her amended complaint does she allege that she has entered into any legitimate business transaction outside the scope of her employment. She does not claim to be a policyholder of Defendant or to have any relationship with Defendant other than the one created under the Associate's Agreement, which she claims to be an employer-employee relationship. Moreover, Plaintiff's claim that Defendant failed to protect her personal identity information involves internal corporate operations. These business procedures simply do not constitute the sort of "external commerce" required to trigger the UDTPA. Plaintiff has not alleged any conduct that would constitute activity affecting commerce. The instant case is simply an employment dispute. As such, Defendant's motion to dismiss Plaintiff's UDTPA claim should be granted.

### 2. Arbitration Agreement

Defendant argues that this court lacks subject matter jurisdiction because Plaintiff's remaining ERISA claims are subject to mandatory arbitration under the Associate's Agreement. This court agrees.

7

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, reflects a "liberal federal policy favoring arbitration agreements" as a means of settling disputes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 281-82 (4th Cir. 2007). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."[2] *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

Under the Federal Arbitration Act ("FAA"), a party can compel arbitration if it establishes: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute that is enforceable under general contract law principles; (3) the relationship of the transaction, as evidenced by the agreement, to interstate commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute. The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to

---

[2] North Carolina also has a strong public policy favoring the settlement of disputes by arbitration. *Johnston County, N.C. v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). Indeed, North Carolina courts have stated that "where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." *Martin v. Vance*, 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999).

arbitration under an agreement in writing for such arbitration."  9 U.S.C. § 3.  Thus,

under the FAA, where a valid arbitration agreement exists and where the claims fall

within the scope of the agreement, arbitration is mandatory and must be enforced

by the courts.  *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001).

Moreover, the Fourth Circuit has held that when all of the claims in a lawsuit are

required to be arbitrated, dismissal, rather than a stay, is a proper remedy.  *Choice*

*Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710-11 (4th Cir. 2001).

Courts apply state contract law principles to determine whether the parties agreed

to arbitrate.  *Hightower,* 272 F.3d at 242.[3]

Here, the intentions of the parties are specifically demonstrated by the

arbitration clause in the 2003 Associate's Agreement signed by Plaintiff.  This

agreement clearly contains a clause making it subject to mandatory and binding

arbitration.  Moreover, directly above Plaintiff's signature there is the following

statement, in all capital letters and underlined: "<u>THIS CONTRACT CONTAINS AN</u>

<u>ARBITRATION AGREEMENT WHICH MAY BE ENFORCED BY THE PARTIES.</u>"

(Ex. A, docket no. 21.)

Plaintiff does not dispute that she signed this agreement, but she contends

that the arbitration agreement is unconscionable because the parties were in

---

[3] Because Plaintiff signed the Associate's Agreement in North Carolina, North Carolina law controls in this case.  *See Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) (holding that in North Carolina, the law governing a contract claim is lex loci contractus, or the law of the place where the contract was formed).

unequal bargaining positions which resulted in oppressive contract terms. Specifically, Plaintiff contends that the agreement is unconscionable because it (1) improperly excludes claims from arbitration; (2) limits available damages; (3) requires consent to pursue class actions; (4) removes her ability to raise claims against third-party beneficiaries to the agreement; (5) limits her ability to sue customers of Defendant; (6) prevents the enforcement of her statutory rights; and (7) violates the covenant of good faith and fair dealing.

To determine whether the arbitration agreement is enforceable, the court must apply the relevant state law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995) ("[A]rbitration is simply a matter of contract between the parties."); *see also* 9 U.S.C. § 2 (stating arbitration agreements "shall be valid, irrevocable, and enforceable, save upon the grounds as exist at law or in equity for the revocation of any contract"). North Carolina law controls here, which requires offer, acceptance, consideration, mutual assent, and the presence of no valid defenses for contract formation. *See Copy Prods., Inc. v. Randolph*, 62 N.C. App. 553, 555, 303 S.E.2d 87, 88 (1983); *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) ("The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.").

Plaintiff does not argue that the entire Agreement is not valid or enforceable; rather, she focuses on the arbitration clause of the Agreement and contends that this

10

provision is not valid because it "is unconscionable on its face." A contract is deemed unconscionable under North Carolina law if the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981). Courts consider the facts and circumstances of each particular case to decide whether the provisions are "so one-sided that the contracting party is denied any opportunity for a meaningful choice" as to whether to agree to them. *Id*. Unconscionability requires both procedural and substantive unreasonableness or unfairness. *See Rite Color Chem. Co. v. Velvet Textile Co.*, 105 N.C. App. 14, 19-20, 411 S.E.2d 645, 648-49 (1992). Plaintiff has not pointed to any alleged procedural unreasonableness of the arbitration clause in question; she does not allege that it was surreptitiously positioned in the Agreement so as to draw attention away from it or that it was not clear and unambiguous. In fact, as noted, directly above the signature line of the Agreement, where Plaintiff signed her name, there is a sentence calling attention to the fact that the Agreement contains a mandatory arbitration provision.

Plaintiff instead seems to argue that the one-sidedness of the arbitration agreement constitutes substantive unfairness. "There is nothing, however, substantively unfair about binding arbitration. If there were, there would not be the

11

strong policy favoring it." *Wilkerson ex rel. Estate of Wilkerson v. Nelson*, 395 F. Supp. 2d 281, 289-90 (M.D.N.C. 2005).

Here, there is no evidence that the agreement signed by Plaintiff was so one-sided as to preclude her from making a meaningful choice. Other than claims related to Defendant's intellectual property, confidential information, and other assets, any dispute arising under or related in any way to the Associate's Agreement is subject to mandatory and binding arbitration. The fact that certain claims are excluded from arbitration does not void the entire arbitration agreement. *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 544 (4th Cir. 2005) (court held that arbitration agreement was supported by mutual consideration even though certain claims were excluded from arbitration).

Plaintiff further argues that the arbitration agreement should not be enforced because it "disallows any claims or remedies other than claims of breach of contract and liabilities arising thereunder." (Pl.'s Mem. Opp. Def.'s Mot. 9.) A clear reading of the Agreement however, shows that by agreeing to arbitration, Plaintiff has not forfeited any substantive rights. Under the arbitration provision, "[t]he arbitrators shall have the authority to award any remedy to which any party would be entitled in a court of law unless such remedy has been effectively waived." (Ex. A., Associate's Agreement ¶ 10.2.) Furthermore, the Agreement does not limit claims "based upon [alleged] misconduct by AFLAC that [are] willful, malicious or

12

fraudulent." (*See id.* ¶ 10.7.1.) Plaintiff alleges in her Amended Complaint that AFLAC "willfully and knowingly failed to provide benefits . . . ." (Am. Compl. ¶ 11.)

Plaintiff also asserts that the class action provision in the arbitration agreement renders it unenforceable. The Agreement provides that "[t]here shall be no . . . class actions without the consent of all parties." (Ex. A., Associate's Agreement ¶ 10.4.) Plaintiff, however, is not attempting to bring a class action suit, nor has she sought AFLAC's consent to bring such an action. The mere presence of a prohibition against class actions, moreover, does not render the Agreement unconscionable. *See Atkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638-39 (4th Cir. 2002).

Plaintiff further argues that the Agreement is unconscionable because "AFLAC has also required that [Plaintiff] arbitrate claims against third-party individuals regardless of whether AFLAC is a party." (Pl.'s Resp. Br. at 10) The Agreement defines third-party beneficiaries to the arbitration agreement as "all past and present officers, stockholders, employees, associates, coordinators, agents and brokers of AFLAC." (Ex. A, Associate's Agreement ¶ 10.1.) The Agreement further provides that its provisions "shall be applicable to any dispute between" Plaintiff and any third-party beneficiary. *(Id.)* In other words, third-party beneficiaries are afforded the same right to compel arbitration that Plaintiff and AFLAC have. The presence of this clause in the Agreement is neither unconscionable nor relevant to the claims Plaintiff has asserted against AFLAC.

Similarly, Plaintiff contends that the Agreement is unconscionable and invalid because it precludes her from pursuing an action against any customer or account of AFLAC. The Agreement provides, however, that "Associate[s] shall not institute legal proceedings in the name of AFLAC against any party for any cause unless such action shall have been approved in advance in writing by a Vice President of AFLAC." (Ex. A, Associate's Agreement ¶ 10.8.) Plaintiff clearly is not prohibited under this provision from suing any customers; she simply cannot do so in AFLAC's name. Her argument that this clause is one-sided is unavailing.

Plaintiff also contends that the "[a]greement is unenforceable because it prevents [Plaintiff] from effectively enforcing her statutory rights." She argues that she could not recover damages in arbitration for her ERISA claims and that she is not financially in a position to pay for any costs associated with arbitration. As noted, however, by submitting her claims to arbitration, Plaintiff does not forfeit any of her statutory rights. Plaintiff bears the burden of showing that the terms of the arbitration agreement would preclude her from effectively vindicating her statutory rights. "This burden is a substantial one and cannot be satisfied by a mere listing of ways that the arbitration proceeding will differ from a court proceeding, or by speculation about difficulties that *might* arise in arbitration." *Cotton Yarn*, 505 F.3d 274, 286-87 (emphasis in original). Plaintiff has made no showing that the costs of proceeding in arbitration will be any greater than the costs associated with litigating her claims in federal court. *See Willis v. Shearson/American Express, Inc.*, 569 F. Supp. 821,

14

825 (M.D.N.C. 1983) ("More than likely, resolution of his claims in [arbitration] will be speedier and less expensive than in a judicial proceeding."). Plaintiff's arguments about this provision "fall well short of satisfying [her] burden." *Cotton Yarn*, 505 F.3d at 287.

Finally, Plaintiff argues that Defendant "has violated the covenant of good faith and fair dealings." These covenants are more applicable to contract performance, rather than contract formation. Moreover, Plaintiff has simply not shown that Defendant has acted in bad faith or unfairly in seeking to enforce the arbitration agreement into which the parties freely entered. Accordingly, Defendant's motion should be granted, and the matter should proceed to arbitration.

## C. Conclusion

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss and to Compel Arbitration (docket no. 19) be **GRANTED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, North Carolina
May 18, 2009

15